IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GEORGE D. METZ, II,          )
                                    )
      Plaintiff,          )
                                    )
v.                             )   CASE NO. 1:22-cv-303-ECM-SMD
                                    )
J. DODSON, *et al*.,         )
                                  )
      Defendants.     )

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pro se plaintiff George D. Metz, II ("Metz") styles himself as an "independent journalist/activist." Compl. (Doc. 1) p. 7, ¶ 1. Throughout the day on June 4, 2020, Metz and an unidentified colleague[1] filmed various government buildings in Dothan, Alabama, in what appears to be multiple attempts to provoke potentially unlawful police responses. The basis of this complaint stems from his interaction with Houston County Sheriff Donald Valezna ("Sheriff Valenza") and Dothan Police Officer J. Dodson ("Officer Dodson"), who detained Metz as he was videoing the outside of a police building from the sidewalk.

Metz now brings 42 U.S.C. § 1983 claims against Sheriff Valenza and Officer Dodson (collectively "defendants") for illegal seizure, unlawful search, and First Amendment retaliation. *Id.* at pp. 7-10. Before the Court is Sheriff Valenza's Motion to Dismiss asserting qualified immunity. Mot. (Doc. 10). Accepting Metz's well-pleaded factual allegations as true and viewing them and the video he submitted in the light most

---

[1] Based on an action filed in this Court involving the same factual scenario, *see Joe D. Southard, II v. Officer D. Bridges and Officer J. Dodson*, 1:22-cv-332-ECM-SMD, it is believed that this man is Joe Southard, II, but there are no facts presently before the Court establishing his identity.

favorable to him, the undersigned finds that Metz has alleged the violation of clearly established constitutional standards and recommends that Sheriff Valenza's Motion to Dismiss (Doc. 10) be DENIED.

Additionally, because Metz has failed to timely serve Officer Dodson, the undersigned recommends that the claims against him be DISMISSED.

## I.   PARTIES & CLAIMS

Count I is a § 1983 claim against Sheriff Valenza for illegal seizure.  It alleges that Sheriff Valenza unlawfully seized Metz without probable cause in violation of his Fourth and Fourteenth Amendment rights.  Compl. (Doc. 1) p. 9, ¶¶ 22-24. Count II is a § 1983 claim against Officer Dodson for unlawful search.  It alleges that Officer Dodson "unlawfully [i]dentified [him] through coercion" in violation of his Fourth Amendment rights. *Id.* at 9-10, ¶¶ 25-27. Count III is a First Amendment retaliation claim against all defendants. It alleges that defendants' constitutional violations "were driven by the fact of [Metz] exercising [his] right to free press." *Id.* at 10, ¶ 28. Metz seeks compensatory and punitive damages. *Id.* at 10, ¶ 29.

## II.   JURISDICTION

This Court has federal question jurisdiction because Metz's § 1983 claims arise under federal law.  28 U.S.C. § 1331.

## III.   PRELIMINARY MATTERS

Metz attached video evidence to his complaint that captures his interaction with defendants. The Eleventh Circuit has allowed district courts to consider police body cam footage referenced in the complaint or submitted with a motion to dismiss without

converting the motion to summary judgment if it is "central to plaintiff's claim, and its authenticity is unchallenged." *Cantrell v. McClure*, 805 F. App'x 817, 819 n.2 (11th Cir. 2020) (unpublished). *See also McDowell v. Gonzalez*, 820 F. App'x 989, 992 (11th Cir. 2020) (unpublished) ("the district court properly considered both the amended complaint and body camera footage that was attached to the motion to dismiss because the body camera footage was central to the amended complaint and was undisputed"). However, Judge Andrew Brasher has raised concerns with this practice and pointed out that the Circuit has never addressed whether audiovisual evidence can be incorporated by reference in a published precedential opinion. *J.I.W. v. Dorminey*, 2022 WL 17351654, at *8 (11th Cir. 2022) (Brasher, J. concurring). The undersigned shares these concerns.

Nevertheless, because the parties rely on the video evidence in support of their respective allegations and arguments[2] and do not challenge the authenticity of Metz's video submission, the undersigned will consider the video evidence under Rule 12(b)(6). When reviewing the video evidence at the motion to dismiss stage, all ambiguities must be construed in Metz's favor. *Cantrell*, 805 F. App'x at 819 n. 2. Unless the video clearly contradicts Metz's well-pleaded factual allegations, they should be accepted as true under Rule 12(b)(6). *Id.* (*citing Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## IV.   FACTUAL ALLEGATIONS

While walking along a public sidewalk on June 4, 2020, Metz and his colleague videoed the outside of the Dothan police training building. Compl. Ex. (Doc. 1-1). As they

---

[2] Sheriff Valenza references Metz's video evidence throughout his reply to his Motion to Dismiss Metz's complaint. *See generally* Reply (Doc. 16).

were videoing, Sheriff Valenza approached Metz in his unmarked police vehicle with dashboard lights flashing. *Id.* at 1:18. Sheriff Valenza exited his vehicle and asked Metz "who [he was] with." *Id.* at 1:35. Metz responded that he was "not with anybody." *Id.* Sheriff Valenza asked if Metz and his colleague were the "two that [came] from our building over there," to which Metz replied, "Possibly." *Id.* at 1:38. Sheriff Valenza then said, "Well, you said you [were] with the media over there." *Id.* at 1:43. Metz acknowledged he had said he was with the media and asked why it mattered. *Id.* Sheriff Valenza replied, "Well, I'm just concerned. You want to walk around and video." *Id.* at 1:50.

Metz asked Sheriff Valenza if his act of videoing was illegal. *Id.* at 1:54. Rather than answer, Sheriff Valenza shifted his attention to Metz's colleague and told him to "come back over here a minute." *Id.* at 1:56. Metz's colleague asked Sheriff Valenza whether he was being detained, to which Sheriff Valenza replied, "I'm talking to you." *Id.* Metz's colleague then said, "I don't care if you're talking to me. Am I being detained? It's not consensual." *Id.* at 2:02. Metz's colleague did not follow Sheriff Valenza's command to come back, and Sheriff Valenza returned his attention to Metz. *Id.* at 2:08.

The following exchange took place between Sheriff Valenza and Metz:

Valenza:     You got any ID on you? I just wanna see—let me see your ID and you can be on your way. I just wanna see—y'all said you were reporters over there.

Metz:        Yeah, I'm with the media.

Valenza:     Well, let me see your credentials.

Metz:            I don't have to show any credentials unless I'm suspected of a crime.

Valenza:         Well, right now, we have something coming up, and we are, I'm asking you for your ID.

Metz:            Ok, do you suspect me of a crime?

Valenza:         We are doing an investigation.

Metz:            Is it an investigation of a crime?

Valenza:         Yes. Yes. Yes. Show me your ID.

Metz:            I don't have ID on me.

Valenza:         You don't have any ID on you?

Metz:            No. I'm not required to. Fifteen dash five dash thirty.[3]

Valenza:         Ok, you want to play, that's fine, you want to play, that's fine. . . . We have something we have concerns about. You're walking around videoing our administrative structures.

Metz:            Yeah. Absolutely.

Valenza:         And we have events coming up.

Metz:            I'm happy for you. I'm really happy for you. A lot of places have cancelled their events.

Valenza:         They haven't here . . . and that's why we're chatting.

Metz:            If I'm doing something illegal, let me know and I'll provide you with my ID.

Valenza:         Ok, you're doing something illegal right now by photographing government buildings.

---

[3] Metz was presumably referring to Alabama Code § 15-5-30, which permits law enforcement officers to "stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions."

Metz:          From the public sidewalk?

Valenza:     No, you went up to our door. You went up to our building, on our property.

Metz:          Absolutely. It's public property. You're absolutely one hundred percent right.

Valenza:     That's why I'm asking for your ID. Because you came in a government building, videoing, and . . .

Metz:          Is that illegal?

Valenza:     Yes. In our opinion, yes. Because we have an investigation going on.

*Id*. at 2:10–3:36.

During this exchange, three more law enforcement vehicles arrived, and two officers joined Sheriff Valenza, one on either side. *Id*. at 2:10–3:28. A third officer approached the group before walking over to speak with a fourth officer. *Id.* Sheriff Valenza then turned to a law enforcement officer who had just arrived and asked, "These are the two?" *Id.* at 3:37. He then said, "They don't seem to want to show ID. I told them, 'Show me ID and you can be on your way.'" *Id.* at 3:43. Metz responded, "Because we haven't broken the law." *Id.* Sheriff Valenza reiterated that Metz could "be on [his] way" by showing identification, and Metz reiterated his reliance on "fifteen dash five dash thirty." *Id.* at 3:49.

Sheriff Valenza then instructed another law enforcement officer to get a photograph of Metz, after which they would "let them go." *Id.* at 4:11. Sheriff Valenza told Metz that they were not trying to harass him but they had concerns about them videoing because they had protests coming up. *Id.* at 4:33. After commenting the protests may "very well . . . be

peaceful," he explained, "but we've had some issues with the last one, and we're just concerned about you videoing our places—our government buildings." *Id.* at 4:36.

Sheriff Valenza continued: "You came in our building wanting to video; you went to our administration building wanting to video; and one of y'all had gone to the DHR wanting to video." *Id.* at 4:56. "These are government structures, and right now, with everything going on, we're concerned about the government structures." *Id.* at 5:07. After Metz commented about the constitutional importance of the freedom of the press, Sheriff Valenza replied, "You haven't shown me [anything] showing you *are* the press." *Id.* at 5:13. "Show me your ID that you're the press and I told you that you could go." *Id.* at 5:19.

Sheriff Valenza's interaction with Metz lasted approximately 4 minutes and 45 seconds from the time he exited his vehicle until he walked away from Metz. *Id.* at 6:05.

## V.   **LEGAL STANDARD**

### A.   **Pro Se Litigants**

Federal courts must "show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education." *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (italics removed). A document filed pro se is "to be liberally construed," and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted). Despite this leniency, a pro se plaintiff must still comply with the threshold requirements of the Federal Rules of Civil Procedure. *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005). Importantly, a district court "does not have license to rewrite a deficient pleading," and—

like complaints drafted by attorneys—a pro se complaint must be dismissed if it fails to state a claim on which relief may be granted. *See, e.g.*, *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008); *Albrata v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007). In other words, while leniency is shown to pro se litigants, this lenience does not give a court license to serve as de facto counsel. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

### B.    <u>Motion to Dismiss</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations sufficient "to raise a right to relief beyond the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim. *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Twombly*, 556 U.S. at 555). The Eleventh Circuit explains that "complaints . . . must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n. 2 (11th Cir. 2010) (internal quotation and citation omitted). To determine whether a plaintiff has stated a claim, the court should first "eliminate any allegations in the complaint that are merely legal conclusions" and then determine whether the well-pleaded factual allegations of the complaint—assuming their veracity—plausibly give rise to an entitlement to relief. *Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotation and citation omitted). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

## V.    ANALYSIS

Sheriff Valenza argues that Metz's complaint should be dismissed because (1) it is a shotgun pleading, and (2) he is entitled to qualified immunity.  Mot. Br. (Doc. 11) pp. 1-7. The undersigned addresses each argument in turn.

### A.    The Complaint Is Not a Shotgun Pleading

Although inartfully drafted, Metz's complaint is not a shotgun pleading. To satisfy the federal pleading standards, complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In one way or another, shotgun pleadings fail to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Shotgun pleadings are subject to dismissal. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

Metz's complaint sets forth individual counts and supports those claims with relevant factual allegations. Within each count, the complaint clearly identifies the defendant(s) against whom the claim is asserted. As such, the complaint gives defendants adequate notice of the claims against them. Therefore, the complaint is not a shotgun pleading and should not be dismissed on that ground.

### B.    Sheriff Valenza Is Not Entitled to Qualified Immunity.

Alternatively, Sheriff Valenza argues that he is entitled to qualified immunity. Mot. (Doc. 11) p. 3. Qualified immunity completely protects government officials sued in their

individual capacities unless their conduct violates "clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (internal quotes and citation omitted).  The Eleventh Circuit explains that "[u]nless the government official's act is so obviously wrong, in light of pre-existing law, that only a plainly incompetent official or one who was knowingly violating the law would have committed the act, the official is entitled to qualified immunity." *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (2003).  Qualified Immunity is a powerful doctrine that provides a true "*immunity from suit* rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis original).

The purpose of qualified immunity is to allow government officials to carry out their duties without fear of personal liability or harassing litigation.  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  The doctrine "prevents public officials from being intimidated—by the threat of lawsuits that jeopardize the official and her family's welfare personally—from doing their jobs." *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation[.]" *Mitchell*, 472 U.S. at 526.  Therefore, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)*.  See also Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) ("[b]ecause of the purpose served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage").

"The applicability of qualified immunity is a question of law to be decided by the court." *Willingham v. Loughman*, 261 F.3d 1178, 1184 (11th Cir. 2001). To receive qualified immunity, a government official must first show that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts occurred. *Hinson*, 927 F.3d at 116; *Maddox*, 727 F.3d at 1120. The burden of proof then shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.* Challenged actions are within the scope of an official's discretionary authority when they were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority. *Hinson*, 927 F.3d at 116; *Gray v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006). In applying this test "'a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Id.* (quoting *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).

Here, Sheriff Valenza was on duty investigating suspicious activity when he encountered Metz outside of the police building and allegedly violated his constitutional rights. Therefore, Sheriff Valenza was acting within the scope of his discretionary authority and is entitled to qualified immunity. *Hinson*, 927 F.3d at 116 ("Defendant Officers readily satisfy [the discretionary authority] requirement, as they undertook all of the challenged actions while on duty as police officers conducting arrests and investigative functions.").

Metz has the burden of overcoming Sheriff Valenza's immunity. *Id.* To do so, he must plead facts that, when viewed in the light most favorable to him, show that (1) Sheriff Valenza violated his constitutional rights, and (2) it was clearly established at the time of the incident that the actions of Sheriff Valenza were unconstitutional. *Id.*; *Maddox*, 727

F.3d at 1120.  The clearly established inquiry is undertaken "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court has discretion to address the two prongs of the qualified immunity analysis in whatever order "will best facilitate the fair and efficient disposition of each case" and may "determine that the right allegedly violated was not clearly established without deciding whether a constitutional violation occurred at all." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009); *Maddox*, 727 F.3d at 1121.

### 1.   Count I: Illegal Seizure Claim Against Sheriff Valenza

Count I is a § 1983 claim against Sheriff Valenza for unlawful seizure in violation of the Fourth and Fourteenth Amendments in which Metz alleges that Sheriff Valenza "seized [him] without probable cause. Compl. (Doc. 1) p. 9, ¶¶ 22-24.

### i.   Metz Was Seized Within the Meaning of the Fourth Amendment

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. A seizure arises "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen[.]" *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "Some factors which 'might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Hunter*, 2008 WL 552881, at *3 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). In an encounter with police, a person is seized

under the Fourth Amendment if a reasonable person under the circumstances would not have believed that he was free to leave.  *INS v. Delgado*, 466 U.S. 210, 215 (1984) (citing *Mendenhall*, 446 U.S. at 554).

Here, Sheriff Valenza told Metz multiple times that he would be free to go *if* he provided his identification or press credentials. These statements suggest that Metz was not free to leave at will, but only if he complied with Sheriff Valenza's requests. Additionally, the video shows that there was a large and immediate police presence after Sheriff Valenza's arrival. Multiple officers surrounded Metz and his colleague at the scene with lights on their police vehicles flashing. This police presence also suggests that Metz was not at liberty to ignore the officers and go about his business. Therefore, construing the allegations and video evidence in the light most favorable to Metz, the undersigned finds that a reasonable person would not have felt that he could leave under these circumstances; thus, Metz was seized within the meaning of the Fourth Amendment during his encounter with Sheriff Valenza.

### ii. Sheriff Valenza Did Not Have Arguable Reasonable Suspicion for a *Terry* Stop

Police may seize a person for a brief investigatory *Terry*[4] stop when (1) they have reasonable suspicion that the person was, or is about to be, involved in criminal activity, and (2) the seizure is reasonably related in scope to the circumstances justifying it in the first place.  *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011).  The reasonable suspicion necessary for a *Terry* stop "is a less demanding standard than probable cause and

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).  However, "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.*  Police "must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* at 123-24 (internal quotes and citation omitted).  Courts should look to the totality of the circumstances when determining if police had reasonable suspicion, *Jordan*, 635 F.3d at 1187, and when conduct is susceptible to both an innocent and a suspicious explanation, an "officer[ ][can] detain the individual[ ] to resolve the ambiguity," *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). Reasonable suspicion may exist based on the collective knowledge of law enforcement officials derived from reasonably trustworthy information. *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010) (applying collective knowledge of law enforcement to find that the officers had probable cause to make an arrest for purposes of qualified immunity).

Within the qualified immunity framework, an officer is entitled to qualified immunity if he had arguable reasonable suspicion for the stop, even if he was mistaken. *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000).  Arguable reasonable suspicion exists if a reasonable officer under the circumstances could have believed the subject was, or was about to be, involved in criminal activity.  *Id.*  If the arresting officer had arguable reasonable suspicion to detain for any offense, qualified immunity will apply. *Skop*, 485 F.3d at 1138.

Turning to the facts here, Metz alleges, and the video evidence confirms, that he was videoing the Dothan Police training building when Sheriff Valenza approached him.

14

Prior to Sheriff Valenza's arrival, Metz had two encounters with law enforcement while videoing the DHR lobby and another administrative building. Upon Sheriff Valenza's arrival, he spoke to Metz and questioned him about his reasons for filming. Sheriff Valenza then requested identification from Metz and informed him that he would be free to leave *if* he provided his identification. Because this is a Rule 12 motion and Sheriff Valenza has chosen not to provide his version of events, the undersigned does not know what information was conveyed to Sheriff Valenza concerning the previous police encounters prior to arriving on the scene.

Whether reasonable suspicion exists is determined by an objective review of the factual circumstances facing the officer, not the officer's subjective state of mind. *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008). Construing the facts here in the light most favorable to Metz, Sheriff Valenza did not have reasonable suspicion or even arguable reasonable suspicion for a *Terry* stop. The only thing the video establishes is that Sheriff Valenza knew that Metz was videoing outside of the police building and had videoed other government buildings earlier that same day.

But videoing public buildings is not criminal activity. "The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). Like all First Amendment protections, this right is "subject to reasonable time, manner and place restrictions." *Id.* Of course, "the First Amendment does not guarantee access to property just because it is owned by the government." *Bloedorn v. Grube*, 631 F.3d 1218, 1230 (11th Cir. 2011). Instead, "courts

15

use 'forum analysis to evaluate government restrictions on purely private speech that occurs on government property.'" *Keister v. Bell*, 879 F.3d 1282, 1288 (11th Cir. 2018) (quoting *Walker v. Tex. Div. Sons of Confederate Veterans, Inc.*, —— U.S. ——, 135 S. Ct. 2239, 2250 (2015)).

While the act of videoing the police building seems intentionally provocative and likely calculated to elicit a police response, it is not—in and of itself—criminal, suspicious, or indicative of a crime. *See Dunn v. City of Fort Valley*, 464 F. Supp. 3d 1347, 1364-65 (M.D. Ga. May 19, 2020) (finding that because the plaintiff "only recorded in public areas and there are no policies enacted (much less published) to establish any time, place, and manner restrictions, the [c]ourt is unpersuaded that [the plaintiff's] actions of videotaping . . . public property and public officials at work is the type of behavior that should be classified as not usual for law-abiding individuals") (internal quotations removed). Therefore, the mere fact that Metz was videoing the police building does not give rise to reasonable suspicion or even arguable reasonable suspicion to detain him.

Construing the complaint and video evidence in the light most favorable to Metz, it shows that Sheriff Valenza was detaining Metz because he refused to provide identification. Indeed, Sheriff Valenza communicated to Metz—on multiple occasions—that he could leave if he showed his identification. This was unlawful. When Sheriff Valenza approached Metz on the sidewalk, he had no reasonable suspicion to even briefly detain him.  At that point, it was strictly a consensual encounter.  *See Florida v. Bostick*, 501 U.S. 429, 434-35 (1991).  Sheriff Valenza was free to ask, but not require, Metz to provide his identification, and Metz was free to disregard Sheriff Valenza and go

about his business.  *Id.*; *Florida v. Royer*, 460 U.S. 491, 497-498 (1983) (person approached by police in a consensual encounter need not answer any questions and may decline to listen to the questions at all and go on his way).  *See also Moore v. Pederson*, 806 F. 3d 1036, 1045 (11th Cir. 2015) ("Because [the arresting officer] did not have a warrant and he was not conducting a lawful *Terry* stop when Moore was inside his home, Moore was free to decide not to answer [the officer's] questions.").  *Id.*  Although Alabama has a stop and identify statute, ALA. CODE § 15-5-30 (1975), reasonable suspicion is required before an officer can demand identification under this statute, and mere refusal to produce identification does not in and of itself constitute reasonable suspicion.  *Hibel v. Sixth Judicial Dist. Ct. of Nevada*, 542 U.S. 177, 184 (2004); *Brown v. Texas*, 443 U.S. 47, 52 (1979).  Therefore, Metz has pleaded a valid Fourth Amendment violation, and it was clearly established at the time Sheriff Valenza detained Metz by the above-cited Supreme Court and Eleventh Circuit precedent that police cannot detain a subject for simply refusing to provide identification in a consensual encounter.

In addition, the complaint does not allege, and the video evidence does not conclusively show, any facts suggesting that other criminal activity—like trespassing—could reasonably be suspected when Sheriff Valenza detained Metz. Alabama's criminal trespass statute states: "A person is guilty of criminal trespass in the third degree when he knowingly . . . remains unlawfully in or upon premises." ALA. CODE § 13A-7-4(a). "A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of

such premises or other authorized person." ALA. CODE § 13A-7-1(3).   Construing the allegations and video in Metz's favor, it is clear that Sheriff Valenza had some knowledge of Metz's prior encounters with law enforcement, but the extent of that knowledge is unknown. The undersigned declines to speculate, at the motion to dismiss stage, what information Sheriff Valenza knew about the DHR encounter at the time he approached Metz and whether that information could have provided Sheriff Valenza reasonable suspicion or arguable reasonable suspicion to detain Metz for trespass or any other prior criminal activity. *See Dunn*, 464 F. Supp. 3d at 1366 (finding that, at the motion to dismiss stage, the court could not accept the defendants' argument that any reasonable officer, knowing what they knew at the time, would arrest the plaintiff—who was videoing in City Hall—for prowling). Accordingly, Sheriff Valenza is not entitled to qualified immunity on Metz's Fourth Amendment illegal seizure claim at this point in the litigation.

## 2. Count III: First Amendment Retaliation Claim Against Sheriff Valenza[5]

Count III is a § 1983 First Amendment retaliation claim against Sheriff Valenza. Compl. (Doc. 1) p. 10, ¶ 28. Metz claims that Sheriff Valenza's violations of his rights were driven by the fact that he was exercising "his right to free press." *Id.*

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for exercising First Amendment rights. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "If an official takes adverse action against

---

[5] Technically, Metz asserts Count III against both Sheriff Valenza and Officer Dodson. Compl. (Doc. 1) p. 10. However, because Metz has not served Officer Dodson and because it is Sheriff Valenza's motion to dismiss that is pending before the Court, the undersigned addresses the claim only as it pertains to Sheriff Valenza.

someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman*, 547 U.S. at 256). However, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured." *Id.* The retaliation "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* A lack of probable cause for an underlying criminal charge "will tend to reinforce the retaliation evidence and show that retaliation was the but-for basis for instigating the prosecution[.]" *Nieves*, 139 S. Ct. at 1728.[6] Under the law of the Eleventh Circuit, a First Amendment claim hinges on the legality of the plaintiff's detention under the Fourth Amendment. *J.S. v. Campbell*, 2006 WL 2864254, at *3 (M.D. Ala. Oct. 5, 2006) (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998) (explaining that when a police officer has probable cause to believe that a person is committing a particular public offense, the officer may lawfully arrest that person, even though the offender is engaged in protected First Amendment activity)).

---

[6] Although the undersigned is not aware of a binding case applying *Nieves* to *Terry* stops, the undersigned is persuaded that the reasoning for *Nieves* is equally applicable to investigatory stops requiring reasonable suspicion. *See Sampy v. Rabb*, 2021 WL 5279480, at *7 (W.D. La. Aug. 26, 2021)[6] ("Judge Saloom defined the encounter as a detention pursuant to investigatory stop rather than an arrest. . . . The Court appreciates no reason why *Nieves* should not apply in this case, regardless of whether the encounter is classified as a detention, requiring reasonable suspicion, or an arrest, requiring probable cause."); *Lopez v. City of Glendora*, 811 F. App'x 1016, 1019, fn. 7 (9th Cir. 2020) (assuming without deciding that *Nieves* would apply in a *Terry* stop case, implying that the plaintiff must show an absence of reasonable suspicion to prevail on a First Amendment retaliation claim).

Here, construing the factual allegations and video evidence in the light most favorable to Metz, Sheriff Valenza detained Metz because he was exercising his First Amendment rights by videoing the police building. Having determined that Sheriff Valenza did not have reasonable suspicion or arguable reasonable suspicion to detain Metz, his First Amendment claim against Sheriff Valenza should not be dismissed at this point in the litigation.

### C. Metz's Claims Against Officer Dodson Should Be Dismissed for Failure to Timely Serve the Complaint

Metz filed his complaint on May 19, 2022. Compl. (Doc. 1). Federal Rule of Civil Procedure 4(m) mandates that a defendant be served within 90 days of the filing of a complaint or else be dismissed without prejudice. FED. R. CIV. P. 4(m). On January 17, 2023, well after this 90-day deadline expired, the undersigned entered an Order (Doc. 20), directing Metz to either serve Officer Dodson or show cause why the claims against him should not be dismissed for failure to effectuate service of process. Metz signed for service of the Order on January 30, 2023. Return Receipt Card (Doc. 21). Since that time, Metz has neither responded to the undersigned's Order nor served Officer Dodson. Therefore, the claims against Officer Dodson should be dismissed without prejudice.

## IV.   CONCLUSION

For the above reasons, it is the

RECOMMENDATION of the undersigned Chief United States Magistrate Judge that Sheriff Valenza's Motion to Dismiss (Doc. 10) be DENIED. Further, it is the

RECOMMENDATION of the undersigned that Metz's claims against Officer Dodson be DISMISSED without prejudice for failure to effectuate service of process. Finally, it is

ORDERED that the parties shall file any objections to this Recommendation on or before March 8, 2023. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 22nd day of February, 2023.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE