**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **GEORGE D. METZ, II,** | ) |
| | ) |
| **Plaintiff,** | ) CASE NO.: 1:22-CV-303-ECM-SMD |
| | ) |
| v. | ) |
| | ) |
| **J. DODSON, et al.** | ) |

**<u>DEFENDANT SHERIFF VALENZA'S OBJECTION TO THE
RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), Defendant Houston County Sheriff Donald Valenza ("Sheriff Valenza") objects to the Recommendation of the Magistrate Judge (Doc. 22) denying Sheriff Valenza's Motion to Dismiss (Doc. 10) and, in turn, his assertion of qualified immunity on the following grounds.

**I.    The Recommendation erred by treating an inapposite district court opinion as controlling precedent.**

First, neither the Plaintiff nor the Recommendation cite any clearly established law that would have given Sheriff Valenza sufficient notice that his alleged conduct violated Plaintiff's First and Fourth Amendment constitutional rights. Under the second prong of the qualified analysis, Plaintiff bore the burden of pointing to some form of clearly established law that would have provided Sheriff Valenza fair notice that his alleged conduct violated Plaintiff's constitutional rights. *Baxter v. Roberts*, 54 F.4th 1241, 1256 (11th Cir. 2022) ("The plaintiff bears the burden at both steps [of the qualified immunity analysis]"). Plaintiff failed to carry this burden and the Recommendation overlooks Plaintiff's failure. Though it is not a court's burden to find clearly establish law that would deprive a defendant of qualified immunity, the Recommendation also

fails to specifically cite or discuss any clearly established law. Instead, the Recommendation states "the above-cited Supreme Court and Eleventh Circuit precedent that police cannot detain a subject for simply refusing to provide identification in a consensual encounter." (Doc. 22 at 17) (no citation in original); *see Jackson v. Sauls*, 206 F.3d 1156, 1165 (11th Cir. 2000) ("The burden of showing that an officer violated clearly established law falls on the plaintiff, and a plaintiff's citation of general rules or abstract rights is insufficient to strip a § 1983 defendant of his qualified immunity.").

"[P]olice officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)). The Recommendation relied exclusively on *Dunn v. City of Fort Valley*, 464 F. Supp. 3d 1347, 1364-65 (M.D. Ga. May 19, 2020), to support its conclusion that Sheriff Valenza lacked reasonable suspicion to detain Metz under these circumstances. The Recommendation committed two errors by relying on *Dunn*.

First, *Dunn* is a district court opinion. "In this circuit, the law can be clearly established for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Lee v. Ferraro*, 284 F.3d 1188, 1197 n.5 (11th Cir. 2002). That means "a district court case cannot clearly establish the law for qualified immunity purposes." *Gaines v. Wardynski*, 871 F.3d 1203, 1211 (11th Cir. 2017). The Recommendation erred because it relied on *Dunn* alone as authority for its conclusion that Sheriff Valenza violated clearly established law when he detained Metz.

The Recommendation also erred because it misread *Dunn*. *Dunn* did not even consider whether those officers had reasonable suspicion to detain that plaintiff. The term "reasonable suspicion" does not appear anywhere in *Dunn*. *Dunn* considered whether those officers had

2

*probable cause to arrest* that plaintiff *under a Georgia statute that prohibits loitering or prowling*. *Dunn*, 464 F. Supp. 3d at 1362-66. The Recommendation does not explain how *Dunn*'s probable cause analysis of Georgia's loitering-or-prowling statute placed every reasonable officer on notice that Sheriff Valenza lacked reasonable suspicion to detain Metz in these circumstances. Sheriff Valenza "must be forgiven for missing the parallel, which escapes us as well." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Instead of basing its conclusion on a solitary district court opinion that only examined whether probable cause existed for an arrest under Georgia's loitering-or-prowling statute, the Recommendation should have asked whether controlling precedent clearly established that Sheriff Valenza lacked reasonable suspicion to detain Metz for investigation "under the circumstances present here." *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018). Neither Metz nor the Recommendation has identified a Supreme Court opinion, a published Eleventh Circuit opinion, or an Alabama Supreme Court opinion that addresses these circumstances.

The Court must grant qualified immunity unless it can "identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (cleaned up and citation omitted). "Only binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in the state where the action is filed, can serve as precedent for this analysis." *Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015). Neither Metz nor the Recommendation has identified controlling precedent that "squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quotation marks and citation omitted). Accordingly, the Recommendation erred when it concluded that Sheriff Valenza violated clearly established law.

## II. This Court misconstrued the facts.

Second, the Recommendation misconstrued the alleged facts and, in turn, drew an incorrect legal conclusion as to whether Sheriff Valenza "seized" Plaintiff within the meaning of the Fourth Amendment. According to the Recommendation, Sheriff Valenza seized Plaintiff when he told him "multiple time that he would be free to go *if* he provided his identification or press credentials." (Doc. 22 at 13) (emphasis in original). But Sheriff Valenza never used such direct language and, in fact, told Plaintiff multiple times that he was just "talking" with Plaintiff and his companion. (*Id.* at 4 (citing Doc. 1-1 at 1:56)). Indeed, Plaintiff's companion walked away from Sheriff Valenza after Sheriff Valenza had asked Plaintiff to produce credentials identifying them as members of the press. (*Id.*). The Recommendation also overlooks several other factors that the Eleventh Circuit has deemed relevant to the seizure inquiry, such as: (1) whether the officer has restricted the plaintiff's freedom of movement; (2) whether the officer kept the citizens identification; (3) the citizen's age, education, and intelligence; (4) the length and questioning of the citizen; (5) the officer's display of weapons; (7) the officer's physical touching of the citizen; and (8) the officer's language and tone of voice. *See United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011). Consideration of these factors show that Sheriff Valenza's talk with Plaintiff was a consensual conversation.

## III. The sheriff had reasonable suspicion to do a Terry stop.

Third, even if Sheriff Valenza seized Plaintiff, the Recommendation also misconstrued the alleged facts and reached an incorrect legal conclusion as to whether Sheriff Valenza possessed an arguable reasonable suspicion to perform a *Terry* stop. The Recommendation found that the alleged facts and Plaintiff's video evidence establishes only that Sheriff Valenza knew that Plaintiff was videoing outside of the police building and had videoed other government buildings earlier that same day. This finding, however, fails to consider the totality of circumstances as they

existed at the time of Sheriff Valenza's encounter with Plaintiff. *See United States v. Lewis*, 674 F.3d 1298, 1305 (11th Cir. 2012) ("in determining whehter a *Terry* stop is justified, the totality of the circumstances—the whole picture—must be taken into account."). As the video shows, Sheriff Valenza clearly articulates that he engaged Plaintiff out of concern that Plaintiff was videoing the inside and outside of public building in connection with upcoming protests related to the death of George Floyd. Putting aside Sheriff Valenza's knowledge of Plaintiff's two encounters with law enforcement that day, Plaintiff was filming the backside of a law enforcement building and the exterior barb-wired fence surrounding it. In a vacuum, this odd behavior is not suspicious. But in conjunction with the outbreak of violent protests, many specifically targeting law enforcement buildings, and Plaintiff's inconsistent, evasive, and defensive responses to Sheriff Valenza's initial questions, then Plaintiff's conduct rises to at least arguably suspicious behavior warranting further inquiry. "Simply put, 'the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *United States v. Ligon*, 533 F. Supp. 3d 1041, 1049 (M.D. Ala. 2020) (quoting *Adams v. Williams*, 407 U.S. 143, 145 (1972)); *see Jordan*, 635 F.3d at 1187 ("Defensive behavior toward police is a relevant factor in [the reasonable suspicion] inquiry.").

**IV.     The First Amendment claims cannot survive because Defendant is entitled to qualified immunity.**

The Recommendation correctly stated that the viability of Plaintiff's First Amendment retaliation claim depends on the existence of Plaintiff's Fourth Amendment wrongful seizure claim. As discussed above, the Recommendation concluded that Sheriff Valenza was not entitled to qualified immunity as to Plaintiff's Fourth Amendment wrongful seizure claim and, therefore, Plaintiff's First Amendment retaliation claim survived as well. Because the Recommendation erroneously denied Sheriff Valenza qualified immunity as to the wrongful seizure, the

Recommendation compounded its error when it also denied Sheriff Valenza qualified immunity as to the retaliation claim.

**V.      Case law does not support the Recommendation.**

Again, "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)). Neither Metz nor the Recommendation cites controlling precedent which clearly establishes that no reasonable officer could have believed that a search incident to arrest was justified under these facts. To the extent the Recommendation concluded that the Court could deny qualified immunity in the total absence of caselaw, that was error. Although controlling Eleventh Circuit precedent recognizes a total-absence-of-caselaw method to deny qualified immunity, *see J.W. ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259-60 (11th Cir. 2018) ("the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary"), that method is invalid. The Supreme Court has never recognized a total-absence-of-caselaw method to deny qualified immunity, and the Eleventh Circuit appears to be the only circuit that recognizes the total-absence-of-caselaw method.

The total-absence-of-caselaw method directly violates Supreme Court precedent. In *United States v. Lanier*, 520 U.S. 259, 270-71, (1997), which is the origin of the obvious clarity doctrine, the Supreme Court specified that "civil liability under § 1983 . . . may be imposed for deprivation of a constitutional right *if, but only if*, '*in the light of pre-existing law* the unlawfulness [under the Constitution is] apparent.'" (Emphasis added.) And the seminal obvious clarity case – *Hope v.*

*Pelzer*, 536 U.S. 730, 739 (2002) – emphasizes that "the unlawfulness must be apparent" *"in the light of pre-existing law."*[1] (Emphasis added.)

As far as the Defendant can tell, the only court of appeals outside the Eleventh Circuit that has ever denied qualified immunity using the total-absence-of-caselaw method is the District of Columbia Circuit in *Wesby v. D.C.*, 765 F.3d 13, 27 (D.C. Cir. 2014). The Supreme Court reversed the D.C. Circuit in *Wesby*:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (*per curiam* ), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,'" *al-Kidd, supra,* at 741-742, 131 S. Ct. 2074 (quoting *Wilson v. Layne,* 526 U.S. 603, 617, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.

*D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018).

The Supreme Court has repeatedly emphasized its requirement for existing precedent:

- *City of Tahlequah v. Bond*, 142 S. Ct. 9, 12 (2021) ("Neither the panel majority nor the respondent has identified a single precedent finding a Fourth Amendment violation under similar circumstances. The officers were thus entitled to qualified immunity.").

- *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8 (2021) ("Although 'this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'") (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)).

---

[1] *Hope* denied qualified immunity to prison officials who chained an inmate to a hitching post for a long period of time based on prior circuit precedent that prohibited handcuffing inmates to fences and cells for long periods of time. *Hope*, 536 U.S. at 742-43. *Hope* did not approve the denial of qualified immunity in the total absence of caselaw. *Hope* based its denial of qualified immunity on controlling circuit precedent with analogous facts which established the law with obvious clarity.

7

- *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) ("police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue") (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)).

- *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue") (quotation marks and citation omitted).

- *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) ("we have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment") (cleaned up and citation omitted).

- *White v. Pauly*, 137 S. Ct. 548, 552 (2017) ("The panel majority misunderstood the 'clearly established' analysis: It failed to identify a case where an officer acting under similar circumstances as Officer White was held to have violated the Fourth Amendment.").

- *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) ("An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it,' meaning that 'existing precedent placed the statutory or constitutional question beyond debate.'") (quoting *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011)).

- *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

The Eleventh Circuit's total-absence-of-caselaw method is irreconcilable with the Supreme Court's "existing precedent" requirement. Defendant disputes the existence of a total-absence-of-caselaw method to deny qualified immunity and urges the Court to adhere to the Supreme Court's existing precedent requirement. Neither Metz nor the Recommendation has identified "existing precedent" that "squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (2018).

In *Thomley v. City of Daleville*, No. 1:17-CV-799-ECM, 2020 WL 53846, at *5 (M.D. Ala. Jan. 3, 2020) (Marks, C.J.), this Court held that because the defendant officer had arguable

8

probable to arrest the plaintiff, the officer was entitled to qualified immunity against the plaintiff's unreasonable search claim alleging that the officer "jabb[ed] his hands in [the plaintiff's] pockets," even though the officer released the plaintiff without taking him to jail.

In *Evans v. Solomon*, the Eastern District of New York held that the Fourth Amendment allows an officer to search a person for identification when probable cause to arrest exists, even if the officer ultimately does not take the person to jail:

> Applying these principles, an officer should be entitled to search an individual for his identification once probable cause to arrest was established regardless of the officer's decision to arrest or not arrest the individual. *Cf.* LaFave, 3 Search and Seizure § 5.4(b) at 200 (suggesting the potential reach of *Cupp:* "if probable cause to arrest plus the making of the arrest justifies a search of the person, without the necessity of also showing probable cause that there is evidence to be found or that any evidence which is found might otherwise be lost, then why is the same not true when there is probable cause to arrest but no arrest?"). Indeed, under the Second Circuit's rationale, the *Ricard* search would have been justified at the time of the search even if the trooper found nothing in the motorist's pocket. Moreover, if an officer initially determines to arrest an individual and conducts a search prior to the arrest, a later change of mind not to effectuate the arrest should not make the search unlawful. In other words, if the Fourth Amendment analysis occurs at the time of the officer's search, *see Maryland v. Macon,* 472 U.S. 463, 470-71, 105 S. Ct. 2778, 86 L. Ed. 2d 370 (1985) (Fourth Amendment requires "an objective assessment of the officers' actions in light of the facts and circumstances confronting him *at the time*" ) (emphasis added), subsequent actions should not be necessary to validate a lawful search. After all, the constitutional linchpin in a search incident to arrest is the probable cause to arrest, not an intention or announcement of formal arrest. *Thus, the Court holds that the Fourth Amendment permitted Sgt. Solomon to search Plaintiff's pocket for his identification once he established probable cause to arrest him for the traffic infraction, even in the absence of exigent circumstances or a subsequent arrest.*

*Evans v. Solomon*, 681 F. Supp. 2d 233, 251 (E.D.N.Y. 2010) (emphasis added).

Sheriff Valenza was "entitled to rely on [these] existing lower court cases without facing personal liability for [his] actions." *Pearson v. Callahan*, 555 U.S. 223, 244-45 (2009). The Recommendation misapplied the qualified immunity standard to Metz's unlawful search claim. The Recommendation did not identify preexisting controlling precedent that would have alerted

9

every reasonable officer that the Fourth Amendment prohibited an officer from conducting a search incident to arrest in these circumstances. Accordingly, the Recommendation erred by recommending that this Court deny Sheriff Valenza qualified immunity.

Respectfully submitted this 8th day of March 2023.

                                            **/s/C. Richard Hill, Jr.**
                                            C. RICHARD HILL, JR. (HIL045)
                                            ASHLEY H. FREEMAN (FRE044)

Capell & Howard, P.C.
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8043
Facsimile:(334) 241-8243
Email: rick.hill@chlaw.com
       ashley.freeman@chlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 8th day of March 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and have placed a copy of it in the United States Mail, postage prepaid to the following:

George D. Metz, II
4980 SE 140th Street
Summerfield, FL 34491

                                            **/s/C. Richard Hill, Jr.**
                                            OF COUNSEL