IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGE D. METZ II, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO.: 1:22-CV-303-ECM-SMD |
| SHERIFF DONALD VALENZA, | ) ) ) |
| Defendant. | ) ) |

## PLAINTIFFS' RESPONSE TO DEFENDANTS MOTION FOR SUMMARY JUDGEMENT AND MEMORANDUM OF LAW

Plaintiff respectfully submits this response and memorandum of law to defendants motion for summary judgement.

## INTRODUCTION

Plaintiff George D. Metz II ("Plaintiff") labels myself an "independent journalist/activist." (Doc. 1 at 7, ¶ 1). In reality, Plaintiff documents over reach by "film[ing] various government buildings . . . in what appears to be multiple attempts to provoke potentially respectful behavior towards a citizen exercising their rights. I then disseminate the recording to the public so as to facilitate a more enlightened public as to how their officials conduct themselves. For a number of reasons the defendant's motion for summary judgement can only be denied, these reasons along with evidence will be presented below and attached with this response. We humbly pray this court graces us with justice.

## **UNDISPUTED BUT YET DISPUTED FACTS**

### **A. EVENTS PROCEEDING JUNE 4TH 2020**

While I may not be able to address what happened five days prior to my arrival, I can assure the court I can read a cad report. While the defense would have us believe that it was only three days before our visit and the call came in on the 1st of june, we can clearly see from the report ( Ex. 3, Dothan/Houston County 911 CFS Report, Doc. 44-3) that the call came in on May 31st. We can also see from that same report that the call was given a low priority, and the caller was identified and hopefully investigated. A general tip about "antifa members coming to town to burn some buildings" is not specific enough to have reasonable suspicion to stop anyone on the day it was received, much less five days later. Even if antifa were coming to town and planned on burning buildings, until they carry out the act no crime is afoot. Thought crime or pre crime doesnt exist yet, and even members of antifa have a right to video tape their publicly accessible public buildings.

Being at a hightened state for criminal activity doesnt mean you can convert a constitutional right into criminal activity or even reasonable suspicion. All of the cases dealing with phone calls providing reasonable suspicion require corroboration of the information. In Alabama v. White, 496 U.S. 325 (1990) the court said,

> *But the tip in Gates was not an exception to the general rule, and the anonymous tip in this case is like the one in Gates:*
> *"[it] provides virtually nothing from which one might conclude that [the caller] is either honest or his information reliable; likewise, the [tip] gives absolutely no indication of the basis for the [caller's] predictions regarding [Vanessa White's] criminal activities."*
> *462 U.S. at 462 U. S. 227. By requiring "[s]omething more," as Gates did, ibid., we merely apply what we said in Adams:*
> *"Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized,"*
> *407 U.S. at 470 U. S. 147. Simply put, a tip such as this one, standing alone, would not "warrant a man of reasonable caution in the belief' that [a stop] was appropriate." Terry, supra, 392 U.S. at 392 U. S. 22, quoting Carroll v. United States, 267 U. S. 132, 267 U. S. 162 (1925).*

The defense position that a general phone call five days beforehand provides reasonable suspicion is not supported by any case law or legal doctrine I could find. While it might provide a basis for an investigation, an actual investigation needs to take place. Simply stopping folks and requesting identification is not an investigation, my ID would have not provided any needed information of value. My identification would have not provided any future intent, it would not disclose if I was in antifa or not.

The defense says it dont need that because magically they have gone back in time to retroactively get reasonable suspicion because I supposedly forged a government document. When I first heard this I was shocked, mostly because the covid sheet was not "required" as the defense is making out. There was no legal requirement by state or county/city law making the form "required". There was also no law making the filling of the form under penalty of perjury and in fact could of been a HIPAA violation by requiring medical information they were not "required" to collect.

The list of "crimes" I could of been charged with was impressive no doubt, however they began to fall apart when reading that some needed intent to defraud as an element. However none of that matters because the defense has entered false evidence of a crime against me. While I regulary admit to protecting my identy from retaliation when signing into government buildings, the defense has made a mistake. Wesley Curry Sr, who I have never heard of before receiving the defendants motion, is not a name I would have used. Taking a few minutes out to do some research, I quickly found Mr. Curry with a google search of "Wesley Curry Sr. Dothan AL". It popped up with his facebook page (Plaintiffs evidence EX 1), futhermore after watching my video from inside the sheriff office that day, you can clearly see Mr. Curry sign in after us at 6:18-7:24 on the left hand side of the screen (Plaintiffs evidence ex 2). A review of that video also shows that at no time did I provide my license to anyone in the sheriff's office.

While like most men I am fond of a good story, this one isnt a good story, nor is it a good excuse to violate my rights. Making up stories to try and retroactively have reasonable suspicion is highlighting exactly why I watch and report on the government. What makes this more unbelievable is the fact that during the whole interaction, not one time was a sign in sheet brought up. In fact, many times he was recorded saying the issue was us filming government buildings, a constitutionally protected activity.

I am also unfimiliar with the "trust me bro" style of evidence the defense has entered. Are we supposed to believe that I filled out that form based on them saying it and writing my identification on it? Why did the sheriff not bring it up one time during the 30 minute detainment, why did he need my ID if I supposedly provided it at the sheriff office? Since he never had my name before the stop, how could he even thought I forged a document? Again refering to the video (Plaintiff's evidence ex 2) shows that at no time did I provide my identification in the sheriff office.

The defense's position falls apart on both reasons for stopping me, the call was too general to provide any kind of reasonable suspicion to stop me, and the made up tale of forging a document is just absurd and clearly not thought through.

The exchange between us was captured on video and audio and confirms that he was only interested in the fact that we were recording government buildings, in fact when asked if I was doing anything illegal he replied "your doing something illegal right now by photographing government buildings". (Compl. Ex., Doc. 1-1 at 2:10-3:36)

Now with their reason to stop me firmly behind us, we can move onto the fact that without reasonable suspicion the defendants detainment was illegal. And as evidenced by his own words it was motivated by our recording, a 1st amendment protected activity.

## QUALIFIED IMMUNITY

The defense asserts they are entitled to qualified immunity, however thats not the case. The defendant violated my rights while suggesting other rights were the basis for his violation. The right to gather information has been held to provide the same access to publicly accessable buildings that the public is entitled to. The press, recording public employees from a public area isnt criminal and only based on other factors could be considered suspicious.

> *The First and Fourteenth Amendments bar government from interfering in any way with a free press. The Constitution does not, however, require government to accord the press special access to information not shared by members of the public generally.*
> *Pell v. Procunier, 417 U.S. 817, 834 (1974)*

In Pell the press wanted more access then what the public had and was denied. They didnt deny the press access to come inside because it was a non public forum, they just affirmed that the press access is exactly what citizens could access.

> *The news media have no constitutional right of access to the county jail, over and above that of other persons*
> *Houchins v. KQED, Inc., 438 U.S. 1,2 (1978)*

There is nothing criminal or suspicious about journalists recording their government officials from a publicly accessable area. A reasonable officer would know they dont have reasonable suspicion to detain someone for recording in public areas. A simple police tactic of following us around and getting our tag number would have been a proper investigation.

I am glad the defense brought up collective knowledge when deciding about reasonable suspicion. Im just wondering if the multiple other deputies I talked to that day and discussed who I was (journalist), and what I was doing (recording government) as evidenced by my videos that day before this stop, dispelled any suspicion. I am sure that the collective knowledge doctrine works to dispell suspicion as well as to confirm suspicion.

In my video "walking around Dothan, a prelude to chaos" ( plaintiff ex 2 12:30-15:05) you can see us talking to a deputy minutes after leaving the sheriffs office, although he didn't detain us. We had a reasonable consensual conversation about who we were and what we were doing. At that point he drove away, clearly not having reasonable suspicion to detain or identify us as no criminal activity was afoot. After this incident I proceeded to the county administration building where we encountered 5 to 6 more deputies including Captain Ivy [1] , and once again we told our story and it was a consensual encounter. The whole day they tried to get my identification and I held them at bay, finally they detained me in the hopes of extorting my identification under threat of arrest. Not one of the many deputies that I spoke to after leaving the sheriff department tried to detain me.

In the qualified-immunity context, an officer is liable for the Fourth Amendment violation if he does not have arguable reasonable suspicion for the Terry stop. Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000). Arguable reasonable suspicion exists only when a reasonable officer in the circumstances could have believed a person had been committing or was about to commit a crime. Id. Here, Defendant conducted a Terry stop without arguable reasonable suspicion. He had no information on my behavior being unlawful, observed lawful conduct with no nexus to suspicious behavior connected to a crime, and seized me upon a show of authority by engaging his lights and the fact that as more officers showed up, we did not feel free to leave, as indicated by defendant repeatedly tell us to show ID and we could leave.

---

[1] https://www.youtube.com/watch?v=8Y-D1tslR5A   County Administration video on my channel

In order for the defense to prevail they must show a link between my legal activity and criminal activity as the 11th circuit has said before.

> *Taking photographs at a public event is a facially innocent act. The mere fact that Williamson's photographs could have been used for unlawful activity—such as carrying out a death threat against Pavan—is not enough to establish even arguable probable cause for Williamson's arrest unless Mills had some datum to connect Williamson to the death threats or other crime.*
> *Williamson v. Mills, 11th circuit 1995 No. 94-2337 page 7*

The general principal that every officer knows and is clearly established is that officers cant not detain someone without reasonable suspicion of criminal activity. While the defense under penilty of perjure tries to manufacture some reasonable suspicion. Many questions arise such as, why wasnt it mentioned in the video, why wasnt it mentioned in the defendants motion to dismiss last year? How is it 4 years later and the defense is trying to use evidence I debunked in 10 minutes?

While the defense tries to muddy the water as to recording in government buildings by bringing in the public forum doctrine, they fail to realize that it is a test applied by the court to surmise if a restriction is constitutional or not. Here it never was introduced that any of those buildings had restrictions against recording, so the forum doesnt matter at all.

The defense says the whole interaction lasted five minutes, even though we can clearly see I was detained for over 20 minutes. It seems that the defendants defense is to mislead the court into thinking it had reasonable suspicion, while downplaying the violation of my rights.

## CONCLUSION

The defendant claims he had arguble reasonable suspicion, he didn't and never did. The defendant claims the right not to be detained without reasonable suspicion isnt clearly, established but it is. The defendant claims he didnt violate my 4th amendment but he did, we all can see it. He said he didnt violate my rights for me exercising my 1st amendment rights, but his words tell a different story.

For all the reasons provided in this response we respectfully ask the court to deny the defendants motion for summary judgement so the case can proceed and justice be done.

Respectfully submitted, this 3rd day of September, 2024.

*[signature]*
George Metz II Pro Se

**GEORGE D. METZ II  PRO SE**
**15301 NW 188th ST**
**Alachua FL 32615**
**patriotdiscussions@gmail.com**
**352-446-8145**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 3rd day of September 2024, I have placed a copy of it in the United States Mail, postage prepaid to the following:

Capell & Howard, P.C.
150 South Perry Street (36104)
P.O. Box 2069
Montgomery, AL 36102-2069

*[signature]*

**GEORGE D. METZ II  PRO SE**

George Metz
15301 NW 188th St
Alachua FL 32615



Retail
$5.25
SEP 04, 2024
ALACHUA, FL
36104
RDC 01    0 Lb 2.90 Oz    R2305K136282

Clerk of court
One church street
Montgomery AL 36104

USPS TRACKING® #